# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 14-cr-00139-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAYCEE L. COLLIER,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Martha A. Paluch, Assistant United States Attorney for the District of Colorado, and the Defendant, Jaycee L. Collier, personally and by counsel, Brian R. Leedy, Assistant Federal Public Defender, hereby submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I.    PLEA AGREEMENT

The defendant agrees to plead guilty to the violation of 18 U.S.C. § 1343, Wire Fraud, charged in Count 1 of the Indictment. The defendant agrees to pay restitution to the United States Army Reserve in the amount of $125,000. The defendant also admits to the forfeiture allegation as set forth in the Indictment, and agrees that the forfeiture described herein is not excessive.

In exchange, the government agrees to move to dismiss the remaining counts in the Indictment, specifically, Counts 2-18, at the time of sentencing.



Court Exhibit 1

Provided the defendant does nothing inconsistent with accepting responsibility between the date of his plea and the date of sentencing, the government will recommend that the defendant receive the maximum reduction for acceptance of responsibility.

At sentencing, the government will argue for a sentence at the bottom of the applicable guideline range. The defendant is free to recommend to the sentencing court a variant sentence below the applicable guideline range.

This agreement is submitted to the Court for its consideration pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure.

The defendant is aware that 18 U.S.C § 3742 affords a defendant the right to appeal the sentence imposed. Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives his right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: (1) the sentence imposed is above the maximum penalty provided in the statute of conviction, (2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upward, or (3) the Court determines that the guideline offense level is greater than 14, and imposes a sentence based upon that offense level determination. Except as provided above, the defendant also knowingly and voluntarily waives his right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742. The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under

28 U.S.C. § 2255. This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim that the defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

## I.   ELEMENTS OF THE OFFENSE(S)

In order to be convicted of a violation of 18 U.S.C. § 1343, the following elements would have to be proven by the government beyond a reasonable doubt:

*First:* the defendant devised or intended to devise a scheme to defraud or to obtain money or property by false or fraudulent pretenses, representations or promises;

*Second:* the defendant acted with specific intent to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises;

*Third:* the defendant used interstate or foreign wire communications facilities or caused another person to use interstate or foreign wire communications facilities for the purpose of carrying out the scheme;

*Fourth:* the scheme employed false or fraudulent pretense, representations, or promises that were material.

Tenth Circuit Pattern Criminal Jury Instructions, 2.57 (2011).

## II.   STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 1343 is as follows: not more than 20 years imprisonment; a fine of not more than the greater of twice the gross gain or loss or $250,000.00, or both; not more than 3 years of supervised release; a $100.00 special assessment fee; costs of prosecution. If probation or supervised

release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### III. COLLATERAL CONSEQUENCES

The conviction may further cause the loss of certain civil rights, including, but not limited to, the right to possess a firearm, vote, hold elected office, and sit on a jury.

### IV. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began was in March 2009.

The parties agree that the government's evidence would be as follows:

The United States Army Reserve (USAR), located in Fort Bragg, North Carolina, had a contract with Document & Packaging Brokers, Inc. ("Docupak"), located in Alabaster, Alabama, for Docupak to administer a program called the Army Reserve

Recruiting Assistant Program ("AR-RAP"). The AR-RAP offered monetary incentives in the form of recruiting referral bonuses to Army Reserve soldiers, known as Recruiter Assistants (RA), for encouraging others to join the USAR. After enrolling online and completing an online training course, the RA would establish an online account to record that RA's nominations of others for enlistment in the USAR. If a potential soldier, known as a nominee, signed an enlistment contract, the RA who nominated that recruit could receive up to $2,000 through direct deposit into a bank account designated by the RA in his online Docupak account. Payments were wired from Docupak's Alabama bank account to the RA's designated bank account. Docupak submitted invoices each month to the USAR Contracting Officer Representative for review and verification of services delivered.

The USAR training module detailed the responsibilities of RAs, which included but were not limited to: identifying recruits within their own civilian sphere of influence, entering the recruit's profile data (personal identifying information) into the Docupak website with that recruit's consent, arranging a meeting for the recruit with an USAR recruiter, maintaining contact with the new recruit throughout the recruitment process, and documenting that contact in the recruit's profile on the Docupak website.

At all times relevant to this case, defendant Jaycee L. Collier was employed as a civilian employee with the Department of Defense at the Military Entrance Processing Station (MEPS) in Denver, Colorado. In his position as a Lead Human Resources Division Assistant (HRA), the defendant was responsible for handling enlistment packets for new recruits joining the USAR and processed through the Denver office. As such, the defendant was ineligible to participate in the AR-RAP program.

Between March 10, 2009, and July 25, 2012, while living in Colorado, the defendant devised a scheme whereby he would obtain from eligible RAs their user names and passwords so that the defendant could enter recruit nominations into those RAs' accounts and share in the AR-RAP bonus money. Over the time period alleged, the defendant was involved in the nomination of over 65 recruits into the AR-RAP Program that resulted in fraudulent referral bonuses being paid to the RAs.

The defendant's transmission of the personal identifying information pertaining to the potential recruits resulted in payment of approximately $125,000 in fraudulent referral bonuses that were wired from Docupak to the RAs' bank account, and the parties stipulate that the loss relevant to the offense to which the defendant is pleading guilty is $125,000. In most instances, the RAs paid a portion of the fraudulent referral bonus money to the defendant. Most RAs paid the defendant on average $500 for each successful nomination. Over the time period alleged, the parties agree the defendant received over $28,000 in payments from the RAs for fraudulent nominations.

Specifically, as charged in Count 1, on December 4, 2009, the defendant transmitted via the internet from his MEPS computer in Denver, Colorado, to Docupak, in Alabaster, Alabama, the personal identifying information pertaining to recruit T.N. so that it would appear as though Recruiting Assistant A.B. nominated recruit T.N. when in fact A.B. did not recruit T.N. The defendant did this so that Docupak would pay A.B. the referral bonus money for the nomination of T.N. and so that the defendant could, and in fact did, share in that bonus money.

### V. SENTENCING COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed,

the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. The appropriate Guideline is §2B1.1(a)(1). The base offense level is 7.

B. There is a 10-level increase because the total loss to the United States Army Reserve caused by defendant's scheme was $125,000. §2B1.1(b)(1)(F) (more than $120,000 but less than $200,000).

C. No other enhancements apply.

D. The adjusted offense level is therefore 17.

E. Pursuant to §3E1.1(a) and (b), provided the defendant does nothing inconsistent with accepting responsibility between the date of his plea and the date of sentencing, the defendant should receive the full three-level reduction for acceptance of responsibility. The resulting offense level would be 14.

F. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is ultimately determined by the Court. The information known to the parties, however, shows that the defendant does not appear to have any prior criminal history. Accordingly, the defendant's criminal history category is estimated to be Category I.

G. Assuming the tentative criminal history facts above are accurate, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

H.     The guideline range resulting from the estimated offense level of 14 above, and the tentative criminal history category above, is 15-21 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 15 months (bottom of Category I, offense level 14) to 240 months (the statutory maximum). *See id.* §5G1.1(a).

I.     Pursuant to guideline §5E1.2, assuming the estimated offense level of 14 above is accurate, the fine range for this offense would be between $4,000 to $40,000, plus applicable interest and penalties.

J.     Pursuant to §5D1.2(a)(2), if the court imposes a term of supervised release, that term shall be at least one year but not more than three years. The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

## VI. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 3 July 2014

Jaycee L. Collier
Defendant

Date: 3 July 2014

Brian R. Leedy
Attorney for Defendant

]Date: 6 Aug 2014

Martha A. Paluch
Assistant U.S. Attorney